**No. 22-35814**

---

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

---

SARAH HOOVER

*Plaintiff-Appellee*,

v.

PHH MORTGAGE CORPORATION D/B/A PHH MORTGAGE SERVICES, HSBC BANK USA, N.A., AS TRUSTEE OF THE FIELDSTONE MORTGAGE INVESTMENT TRUST, SERIES 2006-2, AND NEWREZ, LLC,

*Defendants-Appellants*,

and

QUALITY LOAN SERVICE CORPORATION OF WASHINGTON and IH6 PROPERTY WASHINGTON, L.P., DBA Invitation Homes,

*Defendants*.

On Appeal from the United States District Court
for the Western District of Washington
No. 3:31-cv-05154-RSL
Hon. Robert S. Lasnik

---

### APPELLEE'S ANSWERING BRIEF

---

Christina L. Henry
Henry & DeGraaff, P.S.
113 Cherry St, PMB 58364
Seattle, WA 98104
Telephone # 206-330-0595
chenry@hdm-legal.com

Jason D. Anderson
Anderson Santiago, PLLC
207B Sunset Blvd N.
Renton, WA 98057-5517
Telephone # (206) 395-2665
jason@alkc.net

*Attorneys for Appellee*
Sarah Hoover

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION ............................................................................................... 1

JURISDICTIONAL STATEMENT ...................................................................3

ISSUE(S) PRESENTED ....................................................................................4

STATEMENT OF THE CASE............................................................................4

    I.    Undisputed Facts ....................................................................................4

    II.    Procedural History..................................................................................6

SUMMARY OF THE ARGUMENT .....................................................................8

ARGUMENT .......................................................................................................10

    I.    Foreclosures Completed After the Filing of a Bankruptcy Petition
        Occur in Violation of the Automatic Stay under § 362(a).................10

        A.    Property of the Estate is Broadly Defined ...............................12

            **1.**    Judicial Precedent Regarding Property of the Estate for
                Heirs is Not Unsettled...................................................14

            **2.**    In Washington, Property in a Trust that is Ready for
                Distribution is Subject to a Creditor's Reach ................15

    II.    "Willfulness" Requires Only Intentional Actions (or Inactions) and
        not Specific Intent ...............................................................................18

        A.    The Willfulness Test is Settled Law .........................................18

        B.    PHH Had an Obligation to Remedy Its Stay Violation ............21

        C.    PHH Did Nothing to Rescind the Foreclosure Sale.................26

    III.    A Malicious Intent to Violate the Stay is Not Needed.......................28

i

IV.    The Bankruptcy Court Did Not Err by Declining to Annul the Automatic Stay .......................................................................29

V.    Complete Disregard of Debtor's Rights...............................31

CONCLUSION ..................................................................................31

ADDENDUM ....................................................................................33

   11 U.S. Code § 362 - Automatic stay ..........................................33

   11 U.S. Code § 541(c) .................................................................33

## TABLE OF AUTHORITIES

**Cases**

*Burton v. Infinity Capital Mgmt.,* 862 F.3d 740 (9th Cir. 2017) .............................28

*Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544 (9th Cir. 1991) 7

*Engleson v. Burlington N. R. Co.*, 972 F.2d 1038 (9th Cir. 1992) ..........................29

*Erickson v. Bank of California, N.A.*, 97 Wash. 2d 246 (1982) .............................17

*Eskanos & Adler v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002) .............. 8, 18, 21

*In re Bloom*, 875 F.2d 224 (9th Cir. 1989) ............................................ 8, 18, 21, 28

*In re Campion*, 294 B.R. 313 (9th Cir. B.A.P. 2003) ...........................................21

*In re Chang,* 163 F.3d 1138 (9th Cir. 1998) ........................................................7

In re Cini, 492 B.R. 291 (Bankr. D. Mont. 2013)................................................21

In Re Computer Comms., Inc, 824 F.2d 725 (9th Cir. 1987)..................................11

*In re Cybernetic Servs., Inc.*, 252 F.3d 1039 (9th Cir. 2001) ...................................8

*In re Dyer*, 322 F.3d 1178 (9th Cir. 2003)......................................................... 18, 27

*In re Estate of Wimberly*, 186 Wash. App. 475 (2015) ..........................................15

*In re Finley*, 286 B.R. 163 (Bankr. W.D. Wash. 2002).................................. passim

*In re Fjeldsted*, 293 B.R. 12 (9th Cir. BAP 2003)........................................... 10, 30

ii

*In re Moo Jeong*, 2020 WL 1277575 (B.A.P. 9th Cir. Mar. 16, 2020) ...................29

*In re Partida*, 862 F.3d 909 (9th Cir. 2017) ...............................................8

*In re Perl*, 811 F.3d 1120(9th Cir. 2016)..................................................3

*In re Pettit*, 61 B.R. 341 (Bankr. W.D. Wash. 1986) ...................................... 8, 13

*In re Pinkstaff.* 974 F.2d 113 (9th Cir.1992).............................................18

*In re Schwartz,* 954 F.2d 569 (9th Cir. 1992) .................................... 11, 12

*In re Schwartz-Tallard*, 803 F.3d 1095  (9th Cir. 2015).......................................20

*In re Snowden*, 769 F.3d 651 (9th Cir. 2014) ..........................................28

*In re Strand,* 375 F.3d 854 (9th Cir. 2004) ............................................7

*In re Vetsch*, 620 B.R. 150 (Bankr. W.D. Wash. 2020) .........................................14

*Knettle v. Knettle*, 197 Wash. 225 (1938)................................ 9, 13, 15, 17

*Sternberg v. Johnston*, 595 F.3d 937 (9th Cir. 2010) ...................................... 20, 28

*Taggart v. Lorenzen,* 139 S. Ct. 1795 (2019) ..........................................28

*Yu v. Idaho State Univ.*, 15 F.4th 1236 (9th Cir. 2021) ...............................8

**Statutes**

11 U.S.C § 105(a) .............................................................................28

11 U.S.C. § 362 (a) ..............................................................................10

11 U.S.C. § 362(d) ............................................................................ 9, 30

11 U.S.C. § 362(k) ...............................................................................9

11 U.S.C. § 541(a)(1)........................................................................ 9, 12

11 U.S.C. § 541(c)(2)...................................................................... 9, 12, 13

28 U.S.C. § 1334 ................................................................................3

28 U.S.C. § 157(b)(1)...........................................................................3

28 U.S.C. § 158(a)(1)...........................................................................3

28 U.S.C. § 158(d)(1)...........................................................................3

28 U.S.C. §157(b)(2)(G) ................................................................................3

**Other Authorities**

Restatement (Second) of Trusts § 152 ........................................................13

S. Rep. No. 94-1011 (1976) ........................................................................11

**Rules**

Fed. R. App. P. 4(a)(1)(A) ...........................................................................4

# INTRODUCTION

Appellants[1] or "PHH"[2] were notified – through multiple avenues over the course of four days – that Appellee Sarah Hoover had filed for bankruptcy protection. Her filing occurred on a Monday; the foreclosure of her family's home was scheduled for Friday. That PHH allowed the foreclosure to occur, and refused to remedy the issue after the fact, is a textbook example of an automatic stay violation.

PHH's arguments should be disregarded by this Court, just as the bankruptcy court and district court below rejected the same arguments. The issues presented are not subtle or nuanced, yet PHH persists in making arguments contrary to law. For example, PHH fixates on a "spendthrift trust" argument which has no bearing on this case. Under Washington law, Ms. Hoover had inherited her family's home upon her father's death; though the mechanism involved a simple trust, the legal effect was the same – Ms. Hoover had an unqualified entitlement to her home. As the bankruptcy court and district court both agreed, Ms. Hoover's

---

[1] Appellants PHH Mortgage Corporation d/b/a PHH Mortgage Services, NewRez, LLC, and HSBC Bank USA, N.A., as Trustee of the Fieldstone Mortgage Investment Trust, Series 2006-2 (collectively "Appellants" or "PHH").
[2] Powers of Attorney between the Appellants render PHH an agent of NewRez and HSBC. 1-ER-23-24. Accordingly, hereafter, references to PHH's actions shall be deemed to apply to NewRez and the Trust.

interest in her home brought it into the bankruptcy estate and the automatic stay applied.

Appellee Sarah Hoover argues that Judge Lasnik's appellate decision in the district court below correctly identifies the issues, succinctly addresses and dispenses with the arguments, and appropriately affirms the bankruptcy court's rulings. In short, PHH violated the automatic stay, and undisputed facts objectively demonstrate that such violation was "willful," as that term has been applied for decades in Ninth Circuit jurisprudence. Judge Lasnik's ruling (affirming the bankruptcy court below) should be affirmed in all respects.

In this appeal, PHH presents the same arguments as it did to the district court, albeit with some interesting new perspectives on certain "facts," and asks this Court to come to an opposite conclusion. Perhaps more concerningly, PHH argues that it should not be held responsible for its actions because, as a consequence of its business acquisitions of other mortgage servicers, it was too disorganized to know that what it was doing was wrong. This misstates the law ("actual malice" is not the standard) and attempts to justify seizing and selling someone's family home (in spite of a known bankruptcy filing) as just another day at the office. At other points, PHH belittles Ms. Hoover's financial circumstances, demonstrating that PHH simply wishes that bankruptcy protections did not exist at all. It was *precisely because Ms. Hoover was struggling* that she sought the

protections of the bankruptcy code – she wanted to come current on her mortgage and continue raising her family in the only home her children had ever known.

In short, PHH's arguments run contrary to statute and to this Court's precedent and offer no reason to depart from black-letter law. The district court (in affirming the bankruptcy court) should be affirmed.

## JURISDICTIONAL STATEMENT

The bankruptcy court had jurisdiction over this matter pursuant to 28 U.S.C. § 1334, § 157(b)(1), and §157(b)(2)(G). The district court had jurisdiction over this appeal from the bankruptcy court's final order pursuant to 28 U.S.C. § 158(a)(1). This Court has jurisdiction over this appeal from the district court's final order pursuant to § 158(d)(1), which provides appellate jurisdiction over final orders of the bankruptcy court under 28 U.S.C. § 158(a) and (b). 28 U.S.C. § 158(d)(1). Under 28 U.S.C. § 158(a), an appeal of right lies from "final judgments, orders and decrees" in "bankruptcy cases and proceedings." Congress thus made "orders in bankruptcy cases immediately appealable if they finally dispose of discrete disputes within the larger bankruptcy case." *Ritzen Grp., Inc. v. Jackson Masonry, LLC*, 140 S. Ct. 582, 587 (2020) (citations and alterations omitted). Here, the order appealed in this case definitively resolves a discrete issue addressed by the bankruptcy court – violation of the automatic stay - rendering that issue "as final as it will ever be in this case." *In re Perl*, 811 F.3d 1120, 1127 (9th Cir. 2016). The

district court's order was entered on September 16, 2022 and was timely appealed on October 13, 2022. 1-ER-47-5; Fed. R. App. P. 4(a)(1)(A).

## ISSUE(S) PRESENTED

1.     Whether Ms. Hoover's undisputed interest in her home became an asset of the bankruptcy estate upon the filing of her bankruptcy case;

2.     Whether Ms. Hoover's interest in her home as a consequence of her inheritance was "ready for distribution" at the time of her father's passing;

3.     Whether PHH willfully violated the automatic stay by foreclosing on Ms. Hoover's home despite receiving actual notice of her bankruptcy filing four days prior to the foreclosure sale;

4.     Whether the bankruptcy court properly exercised its discretion in denying a retroactive motion to annul the stay after a foreclosure sale.

## STATEMENT OF THE CASE

This court should affirm the decisions of the district court and the bankruptcy court, both of which determined that PHH willfully violated the automatic stay.

### I.    Undisputed Facts

The bankruptcy court's rationale is an excellent starting point in this case, as it offered a straightforward explanation of PHH's actions, knowledge of the bankruptcy filing, and the applicability of the automatic stay. *See* 1-ER-2-13; 1-

ER-37-46. It is undisputed that PHH received Hoover's notice of bankruptcy filing (1) from Hoover's agent 4 days prior to the foreclosure, (2) directly from the bankruptcy court one day prior to the foreclosure sale, and (3) in a series of calls from Sarah Hoover the day before the sale. 1-ER-9-10; 1-ER-21; 1-ER-42; 1-ER-52; 1-SER-223 at Tr. 83:16-23; 2-SER-340-43; 1-SER-223 at Tr. 100:2-6; 2-SER-307. PHH also received notice after the foreclosure sale, but it declined to take any action or even engage with Ms. Hoover. 1-ER-12; 1-ER-120-21; 1-ER-270 Tr. 115:6-22-116:10.

Second, it is undisputed that Ms. Hoover was the beneficiary of her father's trust, which unambiguously provided that she receive title to her home, and that PHH (and its predecessor Ocwen Loan Servicing, LLC[3]) possessed this information for nearly one year. 1-ER-7. As the bankruptcy court and district court recognized, Washington law provides that this is an unqualified, absolute property right belonging to Ms. Hoover that is part of the bankruptcy estate. 1-ER-16; 1-ER-18; 1-ER-50.

Third, PHH admitted that Ms. Hoover was "an executor or administer of the estate." 1-ER-9. PHH nevertheless refused to postpone the foreclosure sale. 1-ER-9; 1-ER-43; 1-ER-51. While having Ms. Hoover's bankruptcy filing in its

---

[3] The mortgage on the home was serviced by Ocwen Loan Servicing, LLC ("Ocwen") until Ocwen's acquisition in 2019 by Appellant-Defendant PHH Mortgage Company ("PHH"). 1-ER-6; 3-ER-401-406 at ¶ 5, 11; 3-ER-408-437.

possession, PHH ignored pleas from Ms. Hoover on the day before the sale where she continued to explain that she had filed bankruptcy. 1-SER-253 Tr. 96:18-21; 1- SER-267 Tr. 112:8-10; 1-SER-268 Tr. 113:2-9.

Fourth, after the foreclosure, PHH failed to remedy its stay violation, despite innumerable opportunities to do so. 1-SER-238 Tr. 83:16-23; 1-SER-239 Tr. 84:6-85:1; 1-SER-241 Tr. 86:6-23; 1-SER-270 Tr. 115:11-17; 1-SER-271 Tr 116:3-4; 1- SER-283 Tr 128:11-18; 2-SER-366-463. By early January 2020, in response to a request from the foreclosure trustee regarding their notice of Ms. Hoover's bankruptcy filing, PHH still did nothing because – rather than comply with the law – PHH believed there was no longer a loan balance. 1-SER-273 Tr.118:13-24; 1- SER-274 Tr. 119:7-13; 1-SER-274 Tr. 120:9-21.

## II.    Procedural History

On January 10, 2020, IH6 filed motions to reopen Ms. Hoover's bankruptcy case and to annul the automatic stay to validate the foreclosure sale; PHH joined in these motions; 1-ER-4; 1-ER-12; 1-ER-13; 4-ER-659; 1-SER-122-25. On January 25, 2020, Ms. Hoover filed the instant adversary proceeding against PHH, QLS, and IH6 for willful violation of the automatic stay. 2-ER-87-101. On March 3, 2020, the bankruptcy court consolidated the motions into Ms. Hoover's adversary proceeding. 1-ER-13; 4-ER-662.

6

After a year of discovery and motion practice, on February 8, 2021, the bankruptcy court granted summary judgment in Ms. Hoover's favor as to PHH's liability – namely, that there was a willful violation of the automatic stay. 1-ER-2-32; 1-ER-34-36. A denial of PHH's subsequent motion for reconsideration provided additional reasoning behind the court's decision. 1-ER-37-45. The order granting summary judgment in favor of Ms. Hoover also denied Appellants' motion to annul the automatic stay, which was functionally a cross-motion for summary judgment on the issue of liability. 1- ER-36. As Ms. Hoover's motion only sought summary judgment as to liability, at this stage in the litigation, actual damages are not resolved. 1-ER-36. As to Defendant IH6, the bankruptcy court found issues of material fact as to IH6's liability and thus denied the motion as to that issue. 1-ER-36.

After the appeal to the district court, Judge Lasnik affirmed the bankruptcy court's orders on the cross-motions for summary judgment. 1-ER-47-53; 1-ER-54.

## STANDARD OF REVIEW

A grant of a motion for summary judgment is reviewed de novo. *Danning v. Miller (In re Bullion Reserve of N. Am.)*, 922 F.2d 544, 546 (9th Cir. 1991). Interpretations of the Bankruptcy Code that present legal questions are reviewed de novo while findings of fact are reviewed under the clearly erroneous standard. *In re Strand,* 375 F.3d 854, 857 (9th Cir. 2004). "Mixed questions of law and fact are reviewed *de novo.*" *In re Chang,* 163 F.3d 1138, 1140 (9th Cir. 1998).

7

Whether the automatic stay provisions of the Bankruptcy Code have been violated is a question of law reviewed de novo. *See In re Partida*, 862 F.3d 909, 912 (9th Cir. 2017); *Eskanos & Adler v. Leetien*, 309 F.3d 1210, 1213 (9th Cir. 2002); *In re Pettit*, 217 F.3d 1072, 1077 (9th Cir. 2000).

However, whether a party has willfully violated the automatic stay is a question of fact reviewed for clear error. *See Eskanos*, 309 F.3d at 1213. The clearly erroneous standard is "significantly deferential" and requires "a definite and firm conviction that a mistake has been committed." *Id.* A court's factual determination is clearly erroneous if it is illogical, implausible, or without support in the record. *See Yu v. Idaho State Univ.*, 15 F.4th 1236, 1241 (9th Cir. 2021).

The bankruptcy court's decision to grant or deny relief from an automatic stay (such as a ruling on a motion to annul the stay) is reviewed for an abuse of discretion. *See In re Cybernetic Servs., Inc.*, 252 F.3d 1039, 1045 (9th Cir. 2001).

## SUMMARY OF THE ARGUMENT

The bankruptcy court and the district court correctly granted Ms. Hoover's partial motion for summary judgment, finding that PHH willfully violated the automatic stay and properly denied PHH's motion to annul the automatic stay. The filing of a bankruptcy petition prior to the sale of a debtor's property in foreclosure is a violation of the automatic stay, and there is no specific intent required for a willful violation. *In re Bloom*, 875 F.2d 224, 227 (9th Cir. 1989).

Under 11 U.S.C. § 541(a)(1), a bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The property interests included in a bankruptcy estate are broad but there are limited exceptions, including property held in a spendthrift trust. *See* 11 U.S.C. § 541(c)(2). Here, as the district court and bankruptcy court found, even though the Suleiman Trust contains a spendthrift trust provision, it is inapplicable to Ms. Hoover's interest in the Bonney Lake Property because her interest "accrued" upon her father's death and is ready for distribution, i.e. subject to seizure by creditors and thus part of the bankruptcy estate. *In re Finley*, 286 B.R. 163, 166 (Bankr. W.D. Wash. 2002); *Knettle v. Knettle*, 197 Wash. 225, 227–28 (1938). There is no ambiguity in the provisions pertaining to the Bonney Lake Property in the Suleiman Trust. Indeed, the provisions could not be clearer that Ali Suleiman intended the Bonney Lake Property to be conveyed to Ms. Hoover immediately, without restriction.

Congress originally enacted § 362(k) to ensure that bankruptcy judges had jurisdiction to enforce the automatic stay injunction and award damages for stay violations after the Supreme Court called into question bankruptcy courts' contempt power, which had been the traditional vehicle for stay enforcement. It also enacted provisions to give the bankruptcy court wide latitude to retroactively annul the stay in appropriate circumstances. 11 U.S.C. § 362(d); *In re Fjeldsted*,

9

293 B.R. 12, 21 (9th Cir. BAP 2003). The district court and bankruptcy court here did not err in finding a willful violation of the stay that will require an award of damages once their decision is upheld by this court. Moreover, the lower courts did not abuse their discretion in finding that no basis to annul the stay where the debtor notified PHH prior of her bankruptcy prior to the foreclosure sale.

The decisions of the bankruptcy court and the district court should be affirmed.

## ARGUMENT

### I. Foreclosures Completed After the Filing of a Bankruptcy Petition Occur in Violation of the Automatic Stay under § 362(a)

When a debtor files for bankruptcy, she is immediately protected by an automatic stay under 11 U.S.C. § 362 (a) , which stays all creditor collection activities against the debtor. It provides in part: "A petition filed under section 301, 302 or 303 . . . operates as a stay, applicable to all entities, of . . . (4) any act to create, perfect, or enforce any lien against property of the estate; . . . (5) any act to create, perfect, or enforce against property of the debtor any lien …….(6) any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362 (a). To allow individuals to enforce the stay provision, § 362(k)(1) creates a private right of action for willful violations of the automatic stay. Section 362(k)(1) provides "An individual injured by any willful violation of a stay provided by this section shall

recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages."

"Judicial toleration of an alternative procedure of self-help and post hoc justification would defeat the purpose of the automatic stay." *In Re Computer Comms., Inc,* 824 F.2d 725, 731 (9th Cir. 1987). The purpose of the automatic stay is to protect debtors from their creditors while bankruptcy proceedings are underway. *In re Schwartz,* 954 F.2d 569, 571 (9th Cir. 1992) ("[The stay] is designed to protect debtors from all collection efforts while they attempt to regain their financial footing."); *see* H.R. Rep. No. 595, 95th Cong., 1st Sess. 340 (1978) ("The automatic stay is one of the fundamental debtor protections…").

Another purpose of the automatic stay is to provide for an individual's emotional and psychological well-being, not only after a stay violation but by creating strong disincentives to violate the stay in the first place. *See* S. Rep. No. 94-1011, p. 6 (1976). Thus, PHH's excuses that its right hand did not know what its left hand was doing, as well as its contemptuous and irrelevant claims in their Opening Brief that Hoover seeks a substantial money judgment[4] only highlight the reasons the protections of the automatic stay need to be enforced. Op. Br. at 16-17, 45, 50. Such actions encroach on the fundamental balance struck between debtors

---

[4] Any discussions of settlement negotiations in court filed pleadings is a violation of the Federal Rules of Evidence 408.

and creditors in the bankruptcy code and are thus rendered void. 11 U.S.C. §
362(a); *Schwartz,* 954 F.2d at 571. As Ms. Hoover (1) had an unqualified
ownership interest in her Home, and (2) was living in her home at the time of her
filing, absent exceptions or exclusions which do not apply here, the Bonney Lake
Property was brought into her bankruptcy estate. 11 U.S.C. § 541(a)(1) (a
bankruptcy estate includes "all legal or equitable interests of the debtor in property
as of the commencement of the case."). Thus, Ms. Hoover's bankruptcy filing,
regardless of any actual notice issues, rendered the September 13, 2019 foreclosure
sale void and without effect. *Schwartz*; *see also 40235 Washington St. Corp. v.
Lusardi*, 329 F.3d 1076 (9th Cir. 2003) (tax foreclosure auction in violation of stay
was void even though bankruptcy case later dismissed). Since PHH's actions are
undisputed, the only issue in this case is whether Ms. Hoover's interest in the
Bonney Lake Property is somehow "excluded" from the bankruptcy estate under
11 U.S.C. § 541(c)(2). Basic Washington law provides the answer – the property
was part of the estate.

## A. Property of the Estate is Broadly Defined

Property of the estate does not include property in a valid spendthrift trust, *to
the extent* it cannot be reached by creditors.[5] 11 U.S.C. § 541(c)(2); *In re Finley*,

---

[5] Again, this is where Appellants seem to have difficulty accepting that
Washington state law operates differently than many other states. Appellants'

286 B.R. at 166. Section 541(c)(2) provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust *that is enforceable under applicable nonbankruptcy law* is enforceable in a case under this title." § 541(c)(2) (emphasis added).

In this case, under Washington state law, the portion of a trust which has "accrued and is ready for distribution to the beneficiary" is subject to seizure by creditors and is therefore part of the bankruptcy estate. *Finley*, 286 B.R. at 166; *Knettle v. Knettle*, 197 Wash. 225, 227–28 (1938). This Washington rule differs from the rule in most jurisdictions, which is (often) that a creditor may not reach the beneficiary's interest until it is paid to the beneficiary. this, therefore, does not shield PHH from liability.[6] Restatement (Second) of Trusts § 152 comment h; *In re Pettit*, 61 B.R. 341, 346 (Bankr. W.D. Wash. 1986).

Despite Appellants' arguments to the contrary, the holding in *Pattterson v. Shumate*, 504 U.S. 753, 757 (1992) does not lead to a different result. The court in *Patterson* case looked to whether the phrase "*applicable nonbankruptcy law*" under § 541(c)(2) limited the inquiry solely to state law. The statute is not so

---

arguments might have greater merit if this case occurred in another jurisdiction, but in Washington, Ms. Hoover's unqualified right to her Home was a property interest reachable by creditors.

[6] This may explain Appellant PHH's particular fixation on "spendthrift trusts," given that Washington law is somewhat unique in this regard, but PHH operates in multiple jurisdictions.

narrow, and the court found that federal law under the Employee Retirement Income Security Act of 1974 (ERISA) could also fit that statute's definition. However, in this case, the applicable nonbankruptcy law is state law and thus the holding in *Pattterson* is inapposite.

### 1. Judicial Precedent Regarding Property of the Estate for Heirs is Not Unsettled

PHH's plea that application of the automatic stay to heirs who are not on title to property is "unsettled" is flatly wrong, and also misdirects from the relevant inquiry concerning what constitutes property of the bankruptcy estate. Op. Br. at 47-48. There is no escape hatch for creditors who disregard controlling law regarding the treatment of property in a trust in Washington State. Likewise, attempts to analogize the facts here to those in *In re Vetsch* are misplaced, as Ms. Hoover's interest in the Bonney Lake Property had indisputably already accrued when Mr. Suleiman had already died. *See* Op. Br. at 40-41; *In re Vetsch*, 620 B.R. 150 (Bankr. W.D. Wash. 2020) (a spendthrift trust was found to keep the property *out* of the bankruptcy case where the death did not happen until *after* the bankruptcy filing, since property of the estate is determined as of the date of filing).

Here, the Home was originally owned by Ms. Hoover's father, Ali Suleiman with the specific intention of providing a property for his daughter (Appellee Ms. Hoover) to live and raise a family. 1-ER-4; 3-ER-362 ¶ 3; 3-ER-365; 2-ER-103.

Hoover's father's will contained a common "pour-over" provision which placed the Home into the Trust upon his death.[7] 1-ER-4; 2-ER-211 ¶2; 2-ER-220-226. The Trust contained a nondiscretionary provision under Amendment Three that "[a]s soon as practicable after Trustor's [Mr. Suleiman's] death," the Home was to be transferred to Ms. Hoover. 1-ER-6; 2-ER-163-64 at § B.2.3.1. Under Washington law, when a legal right or entitlement to an asset has accrued to the beneficiary and is ready for distribution (such as is the case here), it becomes subject to seizure in satisfaction of the beneficiary's debts even if the asset is still nominally in the hands of the trustee. *In re Finley*, 286 B.R. at 166; *Knettle v. Knettle,* 190 Wash. 395, 401 (1937). In other words, Ms. Hoover's right to the property accrued upon her father's death, and could have been reached by creditors (barring homestead or bankruptcy protections, of course).

### 2. In Washington, Property in a Trust that is Ready for Distribution is Subject to a Creditor's Reach

Washington state law allows creditors to seize assets in the hands of the trustee that are ready for distribution to the beneficiary of the trust. *Knettle*, 190 Wash. at 401. Appellants' claim that the Bonney Lake Property was not "ready for distribution" is unsupported by fact or law, and if anything, elevates form over

---

[7] "A pour-over will is a testamentary device wherein the writer of a will creates a trust and decrees in the will that the property in his or her estate, at the time of his or her death, shall be distributed to the trustee of the trust." *In re Estate of Wimberly*, 186 Wash. App. 475, 483 (2015).

function. Appellants' argument appears to be that an asset is "ready for distribution" once the trustee(s) accomplished the ministerial duty of actually transferring title to Ms. Hoover; this, of course, would be *actually distributing property*. *See* Opening Br. at 34. The property was "*ready* for distribution" the moment Mr. Suleiman passed away. This cannot be the type of additional "duty" referenced in *Knettle*. Relevant duties such as "calculations, deductions, administrative assessments, or other accounting that had to be performed before the property was ready for distribution" are irrelevant to this case as all conditions precedent to distribution satisfied upon Suleiman's death. 1-ER-49-50. Appellants also assume – incorrectly – that the bankruptcy court and the district court found there was a valid "spendthrift trust." First, they did not. Second, again, that is a totally irrelevant distraction given the operation of Washington law. Both the district court and the bankruptcy court found the mandatory distribution language of the trust was triggered by Ali Sulieman's death, the property was ready for distribution, and had accrued as a matter of state law. 1-ER-18; 1-ER-50; ER-107 § B.2.3.1. There was no finding that any "spendthrift trust" language actually applied in any way to the Bonney Lake property.

What Appellants refuse to acknowledge is that the entire concept of a "spendthrift trust" is to allow a trustor to *prevent* the trust beneficiary from selling or conveying the property. *See Erickson v. Bank of California, N.A.*, 97 Wash. 2d

246, 250 (1982). Here, the plain language of the trust is that the entire interest *was to be conveyed to Ms. Hoover immediately, without restriction*. As a beneficiary, under Washington law, Ms. Hoover had the unqualified and immediate right to the Home as an "accrued distribution"; there were no conditions precedent, and no discretion given to the co-trustees. *See Finley,* 286 B.R. at 166. The bankruptcy court thus found that any spendthrift provision applicable to *other* property of the trust was not enforceable or applicable to the Home (which was *not* subject to any such provision) under Washington law and thus not excluded from the bankruptcy estate under § 541(c)(2). *In re Cutter*, 398 B.R. 6, 19 (9th Cir. B.A.P. 2008); *Finley*, 286 B.R. at 166; *Knettle*, 197 Wash. at 227-28. Stated simply, Ms. Hoover had an unqualified right to the Home, and this constitutes a property interest which is part of the bankruptcy estate. The bankruptcy court and the district court squarely and correctly addressed this issue.

The "spendthrift trust" is a non-issue. It is difficult to imagine clearer language which could have identified the Home as an asset for immediate distribution. Under Washington law, the distribution "accrued" and that settles the issue. The legal conclusions of the district court and the bankruptcy court are correct and should be affirmed.

## II. "Willfulness" Requires Only Intentional Actions (or Inactions) and not Specific Intent

To recover damages for violation of the automatic stay, Ms. Hoover must prove that the violation was willful under a preponderance of the evidence standard and this court reviews the bankruptcy court and district court's ruling on that issue for clear error. Willfulness is found when willful violation is satisfied if a party knew of the automatic stay, and its actions in violation of the stay were intentional. *In re Pinkstaff.* 974 F.2d 113, 115 (9th Cir.1992).

### A. The Willfulness Test is Settled Law

Somewhat unexpectedly, Appellants take issue with settled Ninth Circuit precedent, arguing that Ms. Hoover somehow did not meet the "willfulness" standard required for automatic stay violations. In the Ninth Circuit, the "willfulness test" merely requires that: (1) the creditor know of the automatic stay; and (2) that the actions in violation of the stay were intentional acts. *In re Dyer*, 322 F.3d 1178, 1192 (9th Cir. 2003); *Eskanos*, 309 F.3d at 1215 (rejecting creditor's argument that a stay violation required something "more" than allowing a collection lawsuit to remain active). No specific intent is required; a good faith belief that the stay is not being violated "is not relevant to whether the act was 'willful' or whether compensation must be awarded." *In re Bloom*, 875 F.2d at 227 (an action is willful if the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional).

One of PHH's more perplexing arguments is that, despite having repeatedly agreed that that Ms. Hoover had a legally recognized interest in her Home, what really matters is not the bankruptcy code or decades upon decades of judicial precedent, but rather whose name was recorded with the county auditor's office. *See* Op. Br. at 7, 20, 43, 44, 46, 51-52; 1-ER-16; 1-ER-43. This argument reflects a fundamental misunderstanding of bankruptcy law. Again, a "willful violation" does not require a specific intent to violate the automatic stay. Rather, the statute provides for damages upon a finding that the defendant knew of the automatic stay and that the defendant's actions which violated the stay were intentional. Whether PHH "believed" in good faith that it had a right to Ms. Hoover's Home – setting aside the philosophical question of whether a disembodied corporate abstraction is capable of demonstrating "good faith" – the belief has no *legal* bearing on whether an automatic stay violation is "willful," as the term has been specifically defined over decades of precedent.

It is for this same reason that "ignorance of the law" or "advice of counsel" is not a defense to a willful violation of the automatic stay – these subjective elements *may* relate to an appropriate measure of damages, but as to the question of liability, they are irrelevant. Moreover, even where a creditor acts in "good faith," the inquiry does not stop there; a creditor who later learns of a violation of the automatic stay must then take affirmative steps to correct the violation.

*Sternberg v. Johnston*, 595 F.3d 937, 945 (9th Cir. 2010), *overruled on other grounds by In re Schwartz-Tallard*, 803 F.3d 1095, 944-45 (9th Cir. 2015). Failure to do this negates any argument for "good faith." It is not the responsibility of the debtor who sought bankruptcy protection in the first place to badger the creditor into reluctantly complying with federal law. *Id.* at 45. (For whatever it is worth, Ms. Hoover even took this additional step by having her counsel send letters and place phone calls to PHH prior to initiating this proceeding. 1-SER-120-21.

Confoundingly, PHH confirmed that Ms. Hoover held a legally recognized property interest at the time of her bankruptcy filing (as a successor in interest) and nevertheless PHH maintained that it was not required to lift a finger to remedy the stay violation (and void foreclosure sale). 1-ER-42. Perhaps most galling to Ms. Hoover, however, is PHH's assertion that Ms. Hoover was an "unknown third party" who had no rights to her own Home. Op. Br. at 45; 1-ER-8.

PHH wants to have it both ways – when it came time to selling the Home, PHH was the first to claim that it had all of the requisite paperwork and information, but when it comes time to accept responsibility for failing to halt the foreclosure sale, PHH conveniently lacked enough information to determine whether it could even have a conversation with Ms. Hoover. Moreover, PHH's protestations about four days not being enough notice to process a foreclosure sale notice, and its insinuations that Ms. Hoover acted offensively or disingenuously in

filing for bankruptcy, fly in the face of the Bankruptcy Code and its fundamental

purpose. Ms. Hoover used bankruptcy as a shield to save her home, as Congress

intended. She had every right to provide notice to PHH even minutes or seconds

before the filing, and to withdraw the filing once the immediate danger had passed.

That these events did not happen to PHH's liking does not absolve the company of

its responsibility to obey federal law, nor does it grant them an exemption from

*Bloom*'s definition of willfulness. *Bloom*, 875 F.2d at 227

Even if, as it periodically suggest, PHH disregarded or mishandled the

bankruptcy notices, this does not immunize PHH from liability under § 362(k)(1).

"A Creditor's internal disorder does not excuse it from violating the automatic

stay[,]" and creditors bear the risk of cconsequences for failing to comply with the

stay. *In re Campion*, 294 B.R. 313, 317 (9th Cir. B.A.P. 2003) (quoting *Eskanos,*

309 F.3d at 1215). Given that the bankruptcy notice was sent to PHH, PHH is

charged with having knowledge of the bankruptcy stay prior to foreclosing on Ms.

Hoover's home in violation of the stay. Whether a creditor believes its actions are

justified is irrelevant. *In re Cini*, 492 B.R. 291, 317 (Bankr. D. Mont. 2013).

### B. PHH Had an Obligation to Remedy Its Stay Violation

PHH allowed the foreclosure sale to happen despite repeated notice of Ms.

Hoover's bankruptcy filing. The Appellants' failure, after they became aware of

the bankruptcy and resulting automatic stay to take affirmative steps to either

notify the foreclosing trustee, the bankruptcy court if they thought the issue was

21

unclear, or to rescind the foreclosure sale similarly constitutes a "willful" violation of the stay under 11 U.S.C. § 362(k)(1) because there was no question as to their "actual knowledge" of the bankruptcy filing prior to the foreclosure sale.

After futile months of trying to work with PHH to come current on her Loan, on September 9, 2019, as a last resort, Ms. Hoover filed for Chapter 13 bankruptcy protection. 1-ER-8-9. As the foreclosure date loomed, with nowhere else to turn and her finances depleted, Ms. Hoover turned to a company named Elite Legal Network ("ELN") to assist in saving her home from foreclosure. 1-ER-10.[8] Ms. Hoover's representatives at Elite Legal Network immediately faxed notice of the filing to PHH, expecting that PHH would follow the law and halt the sale. 1-ER-21; 1-ER-9. PHH's records confirm that it received notice of the bankruptcy filing days before the foreclosure. 1-ER-9-10. PHH, in receipt of Ms. Hoover's bankruptcy filing, did not contact anyone (including its foreclosing trustee, QLS) to call off the foreclosure sale. 1-ER-10; 1-ER-25. Concerningly, in fact, it appears that almost no communication of any type occurred between PHH and QLS; PHH wanted the money, and QLS wanted to conduct the foreclosure. *Id.* As one more

---

[8] With the benefit of hindsight, Plaintiff has serious misgivings about Elite Legal Network and its representations to consumers, as while it appears to be operated exclusively by nonlawyers, it presents itself as affordable "legal" assistance to consumers desperate to keep their family home. Nevertheless, in this case, it appears that Elite Legal Network's representatives sought to genuinely help Ms. Hoover as best they could.

punctuation of urgency, on September 12, 2019 – one day before the foreclosure sale – Ms. Hoover called PHH twice, once at 3:34 p.m. and again at 7:32 p.m., to verify that PHH had in fact received notice of the bankruptcy filing and would stop the foreclosure sale the next day. 3-ER-249 Tr. 94:16-19; 3-ER-251 Tr. 96:11-22; 2-SER-307. At 7:32 pm, Ms. Hoover spoke to Shelly Robertson, the "relationship manager" of the account for the Home. 2-SER-344-56. Ms. Hoover repeatedly pleaded that she be allowed to speak with someone about the foreclosure, and was repeatedly, if sympathetically, turned down. On the eve of the foreclosure sale, as Ms. Hoover's final phone call demonstrates, PHH still refused to accept what its own files (from its purchase of Ocwen) had documented many months before – Sarah Hoover was authorized to discuss the account, given that her father had passed away and she held an interest in the Property:

> SHELLY ROBERTSON [PHH representative]: Thank you. One moment. Okay. Sarah, okay, Ms. Hoover, I'm seeing the information here; however, I'm not seeing that it's fully authorized as yet.
>
> SARAH HOOVER: It's not authorized; is that what you just said?
>
> SHELLY ROBERTSON: Yeah. I said I'm seeing your name here, but it's not authorized as yet on the account.
>
> SARAH HOOVER: I don't know why. I've been talking to you guys for a month.
>
> SHELLY ROBERTSON: I do understand that. But I would not be able to discuss the account because it's not showing me that this is authorized. . .

2-SER-346 Tr. 2:9-20 (emphasis added).

SARAH HOOVER:  Okay. So all I really need to know is -- I filed bankruptcy. And I talked to Melissa today and she said that the information was added to the account and then the request to issue a stop was sent to the department. But at the time that I talked to her, it hadn't -- the stop hadn't been done as of yet and so that's just what I wanted to know. Is the stop in place yet?

SHELLY ROBERTSON:  I still can't tell you that.

SARAH HOOVER:  Oh, really?

SHELLY ROBERTSON:  Um-hmm.

SARAH HOOVER:  This is crazy.

SHELLY ROBERTSON:  I still can't tell you -- I know. I still can't tell you that, I can't.

SARAH HOOVER:  But I mean --

SHELLY ROBERTSON:  I definitely have to send through this information to make sure that this thing is updated correctly because everybody that is speaking to you can get in trouble for this.

SARAH HOOVER:  Even you.

SHELLY ROBERTSON:  When I spoke with you back in May was just -- was regarding documents and I put that -- not in May -- that this information needs to be updated.

SARAH HOOVER:  Okay.

SHELLY ROBERTSON:  So that's why I can't.

2-350 Tr. 6:2–24. (emphasis added). Toward the end of the call, PHH's

representative plainly told Ms. Hoover "not to worry" about the upcoming sale and

losing her family's Home:

SARAH HOOVER:  So I mean if you put this request in for this account to be updated, it's too late. Tomorrow the house goes on auction. So what's the point?

24

SHELLY ROBERTSON:  I am -- again, I can't give you information, that's what I'm telling you. I'm willing to tell you but I can't.

SARAH HOOVER:  I understand. Can you just tell me yes or no if the --

SHELLY ROBERTSON:  I can't talk --

SARAH HOOVER:  Stop has been in place.

SHELLY ROBERTSON:  I can't. I wish I could. I can't say that. I'm so tempted but I can't tell you.

SARAH HOOVER:  I know.

SHELLY ROBERTSON: All I'm going to say is just not -- **maybe just not to worry**.

2-354 Tr. 10:3 -17. (emphasis added).

Despite all of Sarah Hoover's efforts, PHH proceeded with the foreclosure sale (through its agent, QLS) the following day, September 13, 2019. The winning bid came from a third-party investment company, IH6, for $356,000, yielding $167,407.96 in surplus funds. 1-ER-10. These, too, were also withheld from Ms. Hoover. 1-ER-10. She had lost her home, her money, and her stability. Then, on September 25, 2019, just two weeks after the foreclosure, IH6 posted a Notice to Vacate on the Property; in short, Ms. Hoover was about to be evicted from her own home. 1-ER-11. An employee of the investment group IH6, Jaqueline Rumens, contacted Ms. Hoover on October 3, 2019, to discuss her options. 1-ER-11-12. Thereafter, Ms. Hoover and IH6 reached an agreement whereby she would rent the Home from IH6 – Ms. Hoover was out of options and could not get the Appellants

to take any action to rescind the sale. 2-SER-155; 3-SER-596-604 at RFP No. 6; 2-SER-534-37. Sarah Hoover had now been converted from a homeowner to a renter in the Home which her father had left to her as his final act. Nonetheless, by March 2020, after litigation began in bankruptcy court over the stay violation, as a show of good faith, Ms. Hoover started paying $2,200 each month into her attorney's trust account in order to avoid falling further behind on her obligations. 1-ER-13. Moreover, after the court found the stay was willfully violated and ordered recission of the foreclosure sale and the Bonney Lake Property returned to the Sulieman Trust, the property was transferred to her out of the trust and in January 2021, Ms. Hoover was able to obtain a loan to pay off any encumbrance owed to PHH. Thus, there is patently no basis to PHH's claims that Ms. Hoover had no intention of completing her bankruptcy or reinstating the loan. Op. Br. at 12, 18, 46.

## C. PHH Did Nothing to Rescind the Foreclosure Sale

Creditors have an affirmative duty to not only comply with the automatic stay, but to take steps to rescind any actions which may have unintentionally violated the stay. Ms. Hoover hired an attorney (undersigned counsel) who sent several letters to PHH, QLS, and IH6 in November 2019, December 2019, and early January 2020. The purpose of the correspondence was to formally place all entities on notice of Hoover's bankruptcy, the automatic stay, the fact that the sale

was objectively void, and requesting a rescission of the sale.[9] 1-SER-53 at ¶ 3-4, 2-SER-270 Tr. 115:11-17; 1-SER-120-21. No one took any steps to resolve the matter.

In similar circumstances, the Ninth Circuit in *In re Dyer* found that the post-petition recordation of a deed of trust violated the automatic stay and the creditor refused to attempt to either cure the defect or demonstrate that such attempts would have been futile. 322 F.3d at 1192. The court held that even if a creditor's recording of a deed of trust in violation of the automatic stay was inadvertent, once he became aware of the bankruptcy filing, he should have acted promptly to do something as the court found the creditor "had an affirmative duty to remedy his automatic stay violation ... such as by attempting to undo the recordation process." *Dyer*, 322 F.3d at 1192. Likewise, here, PHH had a duty to rescind the foreclosure sale and its failure to act was inexcusable.

When a creditor has notice of a bankruptcy case, it is the creditor's burden to determine the extent of the automatic stay and seek such relief as is appropriate. *In re Abrams*, 127 B.R. 239, 242 (B.A.P. 9th Cir. 1991). The automatic stay imposes an affirmative duty of compliance by the creditor. As one of the fundamental principles girding the Bankruptcy Code, "the automatic stay requires a creditor to

---

[9] Of course, as discussed above, all parties already had actual notice of these events due to Ms. Hoover's efforts in the week preceding the foreclosure.

maintain the *status quo ante* and to remediate acts taken in ignorance of the stay." *Sternberg*, 595 F.3d at 943. This includes a duty of a creditor to alert the bankruptcy court of actions which may violate the automatic stay, such as conducting a nonjudicial foreclosure sale post-petition. *Burton v. Infinity Capital Mgmt.,* 862 F.3d 740, 746–47 (9th Cir. 2017). The district court and the bankruptcy court correctly recognized the operation of the automatic stay and should be affirmed.

### III.    A Malicious Intent to Violate the Stay is Not Needed

Again, it is the law in the Ninth Circuit that no specific subjective intent to violate the stay is required. *Bloom*, 875 F.2d at 227. Indeed, even a good faith belief that the stay is not being violated "is not relevant to whether the [intentional] act was 'willful' or whether compensation must be awarded." *Id*.

The Ninth Circuit has clearly delineated the two avenues of remedy / recovery, holding that where a remedy is already available for a debtor under 362(k) (automatic stay) and that there is no additional remedy under § 105(a) is available. *In re Snowden*, 769 F.3d 651, 661 (9th Cir. 2014). In *Taggart v. Lorenzen,* 139 S. Ct. 1795, 1804 (2019), a case arising out of a finding of contempt under 11 U.S.C. § 105(a), not a case arising from a statutory cause of action. In short, State explicitly that Taggart did not overrule *Bloom* and that *Bloom* (automatic stay) is clearly apposite here where Taggart (injunction) is not and

28

jurisprudence; contempt of court largely involves subjective intentions, while the automatic stay is a statutory creation which does not impose any sort of *mens rea* requirement. *Bloom*, 875 F.2d at 227. Thus, any cases applying the contempt standard for "willfulness" for entities are inapposite. *See In re Moo Jeong*, 2020 WL 1277575 at *4 (B.A.P. 9th Cir. Mar. 16, 2020) (adopting the 'willfulness' standard in the automatic stay context for trustees where the *Moo Jeong* parties did not object to the standards used in that case, and the cited Ninth Circuit authority addressed a bankruptcy court's equitable powers under § 105(a), rather than § 362(k)(1) willful automatic stay violations).

To the extent Appellants wish to argue that their violations of law occurred in "good faith" – whatever that means for a corporate entity – they are welcome to do so at trial to mitigate damages.

## IV. The Bankruptcy Court Did Not Err by Declining to Annul the Automatic Stay

Appellants argue that the bankruptcy court abused its discretion when it refused to retroactively annul the stay. A court abuses its discretion if it does not apply the correct law, rests its decision on a clearly erroneous finding of a material fact, or applies the correct legal standard in a manner that results in an abuse of discretion. *Engleson v. Burlington N. R. Co.*, 972 F.2d 1038, 1043 (9th Cir. 1992). Here the bankruptcy court was entirely justified in making this decision and the Appellants' arguments to the contrary are without merit.

First, a bankruptcy court has wide latitude to make exceptions to, and to annul the automatic stay under § 362(d). *In re Fjeldsted*, 293 B.R. 12, 21 (9th Cir. BAP 2003). Bankruptcy courts often consult the (non-binding) *Fjeldsted* factors in deciding whether to annul the automatic stay. *Id.* at 25. Thus, the bankruptcy court applied the correct legal rule and exercised its discretion based on facts in the record. 1-ER-19-23.

PHH's disagreement with the outcome has nothing to do with whether the bankruptcy court abused its discretion in denying the motion to annul. While PHH would have sought a different result, that does not rise to the level of reversible error on an abuse of discretion standard.

Appellants largely argue that the bankruptcy court failed to adequately weigh a variety of "facts," such as Ms. Hoover seeking bankruptcy protection prior to the foreclosure sale (cite the page of their argument here), or that Ms. Hoover could not afford to reinstate her mortgage (cite), which are simply recitations for why a person would file a Chapter 13 bankruptcy in the first place. These are not "facts" which weigh against the automatic stay; these are facts which underscore the need for the protections afforded by the automatic stay. PHH has succeeded in demonstrating its distaste for homeowners who seek the protection of bankruptcy, but it has not succeeded in demonstrating any abuse of the bankruptcy court's discretion. Op. Brief at 48. It is a curious strategy to blame the bankruptcy court

for respecting the express purpose of the Bankruptcy Code– to permit individuals a "fresh start."  Appellants denied Ms. Hoover her ability to pursue that fresh start by selling her home from under her feet. In other words, Ms. Hoover was an ideal candidate for a Chapter 13 bankruptcy, and Appellants took this away from her by violating a central tenet of bankruptcy protection: the automatic stay.

## V.      Complete Disregard of Debtor's Rights

Lastly, the district court's affirmance of the bankruptcy court's finding that "[i]n the context of determining whether the equities favored annulment of the bankruptcy stay, the bankruptcy court noted that PHH "show[ed] a complete disregard for the automatic stay and Ms. Hoover's rights by failing to stop the Sale despite receiving notice of the Bankruptcy both four days and one day before the Sale" is not error. 1-ER-50. As the district court found, there is no basis to find that the comments are clearly erroneous or at all relevant to the bankruptcy court's legal conclusions and they are not in any way determinative of any premature ruling on punitive damages. *Id.*

## CONCLUSION

For the aforementioned reasons, Appellee Sarah Hoover respectfully requests that this Court affirm the decisions of the district court and bankruptcy court granting partial summary judgment in favor of Ms. Hoover.

Date:  March 10, 2023

Christina L. Henry                          Jason D. Anderson
Henry & DeGraaff, P.S.                 Anderson Santiago, PLLC
113 Cherry St, PMB 58364           207B Sunset Blvd N.
Seattle, WA 98104                         Renton, WA 98057-5517
Telephone # (206) 330-0595         Telephone # (206) 395-2665
chenry@hdm-legal.com                 jason@alkc.net

*Attorneys for Appellee*
Sarah Hoover

# ADDENDUM

## (STATUTORY AUTHORITIES)

### 11 U.S. Code § 362 - Automatic stay

**(a)** Except as provided in subsection (b) of this section, a petition filed under section 301, 302, or 303 of this title, or an application filed under section 5(a)(3) of the Securities Investor Protection Act of 1970, operates as a stay, applicable to all entities, of—

**(1)** the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title;

**(2)** the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title;

**(3) a**ny act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate;

**(4)** any act to create, perfect, or enforce any lien against property of the estate;

**(5)** any act to create, perfect, or enforce against property of the debtor any lien    to the extent that such lien secures a claim that arose before the commencement of the case under this title;**(6)** any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the case under this title;

**(7)** the setoff of any debt owing to the debtor that arose before the commencement of the case under this title against any claim against the debtor; and

**(8)**the commencement or continuation of a proceeding before the United States Tax Court concerning a tax liability of a debtor that is a corporation for a taxable period the bankruptcy court may determine or concerning the tax liability of a debtor who is an individual for a taxable period ending before the date of the order for relief under this title.

### 11 U.S. Code § 541(c)

**(c)**

**(1)**Except as provided in paragraph (2) of this subsection, an interest of the debtor in property becomes property of the estate under subsection

33

(a)(1), (a)(2), or (a)(5) of this section notwithstanding any provision in an agreement, transfer instrument, or applicable nonbankruptcy law—

    **(A)** that restricts or conditions transfer of such interest by the debtor; or

    **(B)** that is conditioned on the insolvency or financial condition of the debtor, on the commencement of a case under this title, or on the appointment of or taking possession by a trustee in a case under this title or a custodian before such commencement, and that effects or gives an option to effect a forfeiture, modification, or termination of the debtor's interest in property.

**(2)** A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title.

# UNITED STATES COURT OF APPEALS
# FOR THE NINTH CIRCUIT

### Form 8. Certificate of Compliance for Briefs

*Instructions for this form:* http://www.ca9.uscourts.gov/forms/form08instructions.pdf

**9th Cir. Case Number(s) 22-35814**

I am the attorney or self-represented party.

**This brief contains 7,607 words,** excluding the items exempted by Fed. R. App. P. 32(f). The brief's type size and typeface comply with Fed. R. App. P. 32(a)(5) and (6).

I certify that this brief *(select only one)*:

[ X ] complies with the word limit of Cir. R. 32-1.

[ ] is a **cross-appeal** brief and complies with the word limit of Cir. R. 28.1-1.

[ ] is an **amicus** brief and complies with the word limit of Fed. R. App. P. 29(a)(5), Cir. R. 29-2(c)(2), or Cir. R. 29-2(c)(3).

[ ] is for a **death penalty** case and complies with the word limit of Cir. R. 32-4.

[ ] complies with the longer length limit permitted by Cir. R. 32-2(b) because *(select only one)*:
    [ ] it is a joint brief submitted by separately represented parties;
    [ ] a party or parties are filing a single brief in response to multiple briefs; or
    [ ] a party or parties are filing a single brief in response to a longer joint brief.

[ ] complies with the length limit designated by court order dated _____.

[ ] is accompanied by a motion to file a longer brief pursuant to Cir. R. 32-2(a).

**Signature** _s/ Christina L. Henry_ **Date** _March 10, 2023_
*(use "s/[typed name]" to sign electronically filed documents)*

1